STATE OF HAWAII, Plaintiff-Appellee, *v.* ERNEST WESTON KOANUI, Defendant-Appellant

NO. 8227

(CRIMINAL NO. 55167)

JULY 30, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

In a bench trial on stipulated facts, defendant-appellant Ernest Weston Koanui was convicted of Promoting a Detrimental Drug in the First Degree, in violation of Hawaii Revised Statutes (HRS) § 712-1247(1)(e) (1976, as amended). He appeals from the lower court's denial of his motion to suppress evidence (marijuana) seized by the police after they stopped him for investigation. He contends that his detention violated his right against unreasonable searches and seizures under the fourth amendment of the United States Constitution and article 1, section 7, of the Constitution of the State of Hawaii and that the evidence is a fruit of the illegal detention which may not be used against him.

The broad issue is whether the investigative stop was constitutionally permissible. The narrow issue is whether there were specific and articulable facts which, taken together with rational inferences from those facts, supplied the officers with a particularized and objective basis for suspecting Koanui of criminal activity. We answer yes.

On October 15, 1980, Honolulu Police Officers Hisatake and Perry were on narcotics detail at the Honolulu International Airport. Both were assigned to detect couriers involved in drug smuggling.

The officers were in plain clothes but did not attempt to conceal that they were police officers. No attempt was made to hide the fact that at least one of them was armed. Their attitude and mannerisms were intended to cause persons involved in criminal activity to become nervous or react to their presence in an unusual way.

Hisatake and Perry had worked as police officers for two and one-half and nine years respectively. Both had received extensive training in the detection of drug traffickers.

At about 7:00 p.m. on October 15, 1980, the officers walked into the Aloha Airlines baggage claim area in Honolulu and stood about eleven feet from the carousel. They observed Koanui standing directly in front of them about two feet from the carousel. They also observed the driver of a van parked about twenty yards away at the curbing fronting the carousel area twice walk over to Koanui, talk with him, and then return to the van. When the baggage started

to arrive onto the carousel, they noticed a cardboard box of the type which normally contains canned food.

Four, five, or six times Koanui turned and looked towards the officers, then back to the carousel. Then Koanui walked to a nearby restroom. After he had entered the restroom, he stuck the upper part of his body out, looked at the officers, and then went back to the restroom and stayed there for awhile.

When Koanui came out of the restroom, he stood at the carousel and looked back at the officers two or three more times. By that time most of the baggage had been claimed and the carousel was almost clear. With only three or four items remaining on the carousel, Koanui picked up the cardboard box and walked very quickly to the van. The box had been on the carousel for about ten minutes.

The officers "stopped" Koanui at the van, identified themselves as police officers, and told him that they suspected that the box contained narcotics. Koanui responded, "Neh, brah, got only Hawaii food." They asked him, "Do you mind if we look?" He responded, "No, go right ahead and look." As the officers began to open the box, Koanui said, "Eh, brah, I got only leaves." They asked him if "leaves" meant marijuana, and he said, "Yes." The officers asked Koanui "if he'd like to come with us to our office, to clear up this matter," and he and the driver of the van voluntarily went with the officers. At their office the officers presented Koanui with a constitutional rights form and a consent to search form, and after both were read and signed by Koanui, the box was opened and 4.5 pounds of marijuana were found.

At the motion to suppress hearing, the prosecutor conceded that the officers' initial inquiry of Koanui was an investigative stop. Consequently, we do not address that question.

The fourth amendment of the United States Constitution, which prohibits unreasonable seizures, applies to all seizures of the person including brief investigatory stops. *U.S. v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690 (1981). Under the fourth amendment, law enforcement officials "may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio,* 392 U.S. 1, 22, 88 S. Ct. 1868 (1968). "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together

with rational inferences from those facts, reasonably warrant that intrusion." *Terry* at 21. Based upon all the circumstances, the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. *Cortez, supra.* Judicial evaluation of the reasonableness of the intrusion must be conducted on an objective and reasonable person standard. *Terry* at 21 and 22. However, when applying that objective standard, the situation is viewed from the viewpoint of reasonable police officers with the experience and training of the officers who made the intrusion. *Brown v. Texas,* 443 U.S. 47 (1979); *U.S. v. Brignoni-Ponce,* 422 U.S. 873 (1975). The process does not deal with hard certainties but with probabilities. *Cortez* at 418.

Hawaii's Constitution (article 1, section 5) and case law follow the federal precedent.[1]

Koanui contends that his actions were not suspicious, and even if they were suspicious, the reasonable explanation for them is that the intimidating presence of the two non-uniformed officers, whom he may or may not have known were police officers, caused him to be fearful and to act as he did. He argues that it is no more reasonable to conclude that his actions were indicative of criminal activity as it is to conclude that they were not.

In our view, when Koanui carried the box to the van, all of his prior actions became reasonably suspicious. By then it was highly unlikely that he was waiting for more baggage or that he was waiting for someone to meet him. It was then reasonable for the two officers to suspect that he was involved in criminal activity and to investigate.

We do not agree that a reasonable person who is not involved in criminal activity would have acted as Koanui did even if he were apprehensive about the presence and actions of the two officers nor

---

[1] Hawaii's case law differentiates among

1. Field interrogations (which are not fourth amendment "seizures"), *State v. Joao, Jr.,* 56 Haw. 216, 533 P.2d 270 (1975); *State v. Tsukiyama,* 56 Haw. 8, 525 P.2d 1099 (1974);

2. Investigative stops, *State v. Haili,* 63 Haw. 553, 632 P.2d 1064 (1981); *State v. Madamba,* 62 Haw. 453, 617 P.2d 76 (1980); *State v. Bennett,* 62 Haw. 59, 610 P.2d 502 (1980); *State v. Kea,* 61 Haw. 566, 606 P.2d 1329 (1980); *State v. Barnes,* 58 Haw. 333, 568 P.2d 1207 (1977);

3. Frisks, *State v. Faalafua,* 64 Haw , 641 P.2d 979 (1982);

4. Arrests, *Barnes, supra;* and

5. Searches, *Barnes, supra.*

do we agree that their presence reasonably explained Koanui's suspicious actions.

In light of all the circumstances, we hold that the intrusion was reasonably warranted, that the officers had a sufficient basis for suspecting Koanui of criminal activity, and that the investigative stop was lawful. Consequently, the evidence was the fruit of a lawful detention.

Affirmed.

*Christopher Bouslog,* Deputy Public Defender, for defendant-appellant.

*Lila LeDuc,* Deputy Prosecuting Attorney, for plaintiff-appellee.