Electronically Filed
Supreme Court
SCWC-14-0000391
31-AUG-2018
08:10 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Petitioner and Respondent/Plaintiff-Appellee,

vs.

SHAWN D. VISINTIN,
Respondent and Petitioner/Defendant-Appellant.

SCWC-14-0000391

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0000391; CR. NO. 13-1-0166)

AUGUST 31, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

A protracted pretrial period can hinder the accurate determination of a case as evidence dissipates, as well as cause anxiety and hardship to a defendant awaiting the disposition of criminal charges. Thus, the Hawaiʻi and U.S. Constitutions and our court rules grant an accused the right to a prompt adjudication, and a case generally must be dismissed if a

defendant is held to answer for a period exceeding a prescribed time limit or an unreasonable amount of time without a trial ensuing.

In this case, the State was not prepared to proceed with a prosecution on the date of the defendant's initial court appearance. In a process referred to as a calendar call, the court read aloud a list of defendants against whom no charges had been filed before stating orally that the defendants were free to go and that any bail or bond they posted would be discharged. Seven months later, the defendant was indicted for the same crime for which he had been arrested, and he moved to dismiss the case based on the State's delay in bringing the prosecution.

We now hold that, because no written order or notice of the ruling was filed effectively discharging the defendant's bail, he remained held to answer for the alleged crime underlying his arrest and the case must be dismissed under our court rules for this reason. We further hold that the Intermediate Court of Appeals erred by considering the legal merits of the defendant's constitutional speedy trial challenge when the trial court failed to make the factual findings necessary for review. Accordingly, we remand the case for dismissal with or without prejudice as the trial court determines appropriate under our court rules. We also set forth

applicable legal principles for the trial court's evaluation of the defendant's constitutional speedy trial challenge if the dismissal under our court rules is determined to be without prejudice.

## I.    BACKGROUND

### A.  Events on August 7, 2012 and Visintin's Arrest

On August 7, 2012, around 2:40 a.m., Officer Brian Silva of the Kauai Police Department was on uniform patrol when he saw a person running across the street to a facility that appeared to be closed.  Upon turning on his cruise lights, Officer Silva saw the figure of a person in the bushes of the facility's driveway.  Officer Silva exited his vehicle, ordered the person to come out of the bushes, and asked the person for identification.  Officer Silva observed that the person was breathing heavily and sweating profusely and that there was an odor of alcohol emitting from the person.  The person, who was identified as Shawn Visintin, provided Officer Silva with his driver's license from the State of Montana.

While Visintin was removing his license from his wallet, Officer Silva saw a concealed weapons permit in the wallet.  Suspecting that Visintin may be armed, Officer Silva asked him if he was carrying any weapons.  After Visintin responded that he had a handgun, Officer Silva conducted a pat-down search of Visintin and discovered a semi-automatic .45

3

caliber handgun in the back part of the waistband of Visintin's pants. Officer Silva then recovered the handgun, which was unloaded, and placed Visintin under arrest for place to keep pistol or revolver in violation of Hawaii Revised Statutes (HRS) § 134-25.[1]

## B. Events Following Visintin's Arrest

Visintin's bail was set at $10,000. Upon posting bail on August 7, 2012, Visintin was given a "Bail/Bond Receipt, Acknowledgment, and Notice to Appear" form, indicating that he was to appear in district court on September 5, 2012.[2]

In an email to the prosecutor dated August 31, 2012, counsel for Visintin inquired whether Visintin's matter would proceed as scheduled on September 5 or if the State of Hawaiʻi intended to dismiss the charge without prejudice. Counsel provided Visintin's full name and the "BBRA NO."[3] associated with the case. The prosecutor responded that her office had not received the police reports and thus no complaint had been filed.

---

[1] HRS § 134-25(a) (2011) provides in relevant part, "Except as provided in sections 134-5 and 134-9, all firearms shall be confined to the possessor's place of business, residence, or sojourn."

[2] The form appears to be identical to Form J of the Hawaiʻi Rules of Penal Procedure.

[3] "BBRA" is an acronym used to refer to "Bail/Bond Receipt, Acknowledgment, and Notice to Appear."

A "calendar call" was conducted in the District Court of the Fifth Circuit (district court) on September 5, 2012.[4] During this proceeding, the district court called the names of those persons against whom no complaint had been filed, including Visintin, who was not present.[5] The court announced that these persons were free to go and that any cash bail they posted would be refunded or their bonds would be discharged. However, the record does not contain a filed document or calendar notation indicating that Visintin's bond was discharged, that the case was dismissed, or that the case was addressed by some other disposition. Nor does the record show that Visintin received notice of the outcome of the September 5, 2012 proceeding.

More than seven months later, on April 25, 2013, a grand jury indicted Visintin on one count of place to keep pistol or revolver in violation of HRS § 134-25 and one count of unregistered firearm in violation of HRS §§ 134-3(a)[6] and 134-

---

[4]     The Honorable Trudy K. Senda presided.

[5]     The State surmised that Visintin's non-appearance at the calendar call was due to Visintin's counsel knowing beforehand that no complaint would be filed.

[6]     HRS § 134-3(a) (2011) provides in pertinent part as follows:

    Every person arriving in the State who brings or by any
    other manner causes to be brought into the State a firearm
    of any description, whether usable or unusable, serviceable
    or unserviceable, modern or antique, shall register the

                                            (continued . . .)

17(b).[7]  The indictment was based on the same conduct for which Visintin had been arrested almost nine months earlier.  On April 29, 2013, the Circuit Court of the Fifth Circuit (circuit court) issued a warrant for Visintin's arrest and set bail at $10,000.[8]

In an email dated April 30, 2013, the prosecutor informed Visintin's counsel of the indictment and the outstanding bench warrant for the arrest of Visintin, who had returned to Montana following his release from custody.  The prosecutor suggested that Visintin fly back to Kaua'i rather than be arrested and extradited.  Defense counsel replied by email and inquired whether Visintin's case could be resolved at arraignment.  In a response dated May 1, 2013, the prosecutor stated that she would provide an answer at a later time as she was getting ready for a trial scheduled the following week.  Three weeks later, in an email dated May 24, 2013, the prosecutor asked defense counsel whether Visintin was planning on returning to Kaua'i to turn himself in, adding that she would

---

(. . . continued)

firearm within five days after arrival of the person or of the firearm, whichever arrives later[.]

[7]    HRS § 134-17(b) (2011) states, "Any person who violates section 134-3(a) shall be guilty of a petty misdemeanor."

[8]    The Honorable Kathleen N.A. Watanabe presided.

not discuss a plea offer until Visintin was arrested on the warrant.

On May 31, 2013, the State of Montana filed a "Fugitive from Justice Complaint" (fugitive complaint) in response to the warrant issued by the circuit court. In the fugitive complaint, a Montana County Attorney stated that Visintin was wanted in Hawaiʻi, Fifth Circuit, for the two indicted offenses; that a warrant had been issued for Visintin's arrest; that Visintin "ha[d] fled from justice or ha[d] been convicted of crimes in that state and ha[d] escaped from confinement or ha[d] broken the terms of his bail, probation or parole"; and that a request had been made by the authorities in Hawaiʻi for his arrest. (Capitalization omitted.) The fugitive complaint requested the issuance of a warrant from the Montana court commanding law enforcement officers "to apprehend the said fugitive" and bring him to court.

The next day, on June 1, 2013, Visintin was arrested on the fugitive complaint, and he proceeded to post bail in Montana. Three days later, the Montana County Attorney filed a motion to dismiss the fugitive complaint on the basis that "it [was] not in the interest of justice to pursue." The following day, the Montana court granted the motion, dismissed the case, and exonerated any bond posted by Visintin.

Visintin subsequently returned to Kaua'i voluntarily and on August 1, 2013, filed a motion in the circuit court to recall the bench warrant issued after his indictment. The court denied Visintin's request to be released on recognizance but reduced the bail amount from $10,000 to $100.[9] Visintin posted bail on August 6, 2013, and he was arraigned the same day.

## C. Motion to Dismiss

### 1. Visintin's Motion and the State's Opposition

On August 20, 2013, Visintin filed a "Motion to Dismiss Based on Rule 48, Speedy Trial, Right to Bail and Due Process" (motion to dismiss) in the circuit court. In his motion, Visintin argued that the time limit set forth in Rule 48 of the Hawai'i Rules of Penal Procedure (HRPP)[10] was exceeded

---

[9] The Honorable Randal G.B. Valenciano presided over all remaining circuit court proceedings.

The order reducing Visintin's bail also granted Visintin permission to travel outside the State of Hawai'i during his pretrial release provided he executed a waiver of extradition and appeared for all court proceedings. Visintin executed the required waiver on August 6, 2013.

[10] HRPP Rule 48 (2000) provides in relevant part as follows:

(b) By Court. Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within six months:

(1) from the date of arrest if bail is set or from the filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made . . . .

(continued . . .)

based on the plain language of the rule because more than nine months had passed from the setting of bail to his arraignment.[11] Visintin submitted that HRPP Rule 48 does not support the conclusion that the "unsetting of bail" triggers Rule 48 tolling. Rather, he maintained, tolling requires that the State demonstrate good cause for the delay.

Visintin contended that the delay, which doubled the period allowed under the rule, was entirely attributable to the State and that the State had provided no good cause for the delay. Thus, Visintin concluded that HRPP Rule 48 supported the dismissal of his case with prejudice.

Visintin also contended that his constitutional right to speedy trial, which attached at his initial arrest, was

---

(. . . continued)

> (c) Excluded Periods. The following periods shall be excluded in computing the time for trial commencement:
>
> . . .
>
> (6) the period between a dismissal of the charge by the prosecutor to the time of arrest or filing of a new charge, whichever is sooner, for the same offense or an offense required to be joined with that offense;
>
> . . .
>
> (8) other periods of delay for good cause.

[11] Visintin distinguished his case from State v. Johnson, 62 Haw. 11, 608 P.2d 404 (1980), arguing that, unlike in Johnson where the defendant was released outright, bail was set in his case and the setting of bail is the point from which the clock runs pursuant to HRPP Rule 48.

violated. He maintained that the State was entirely responsible for the delay and had provided no valid reason for it, that the delay was presumptively prejudicial, that he suffered tangible losses to his employment, that "memories have faded and even police witnesses who 'searched the area for criminal activity with negative results' have apparently retired," and that he had always demanded a speedy trial. Visintin also submitted that the calendar call procedure does not provide a mechanism by which a defendant could assert the right to speedy trial. Thus, Visintin argued, the violation of his constitutional right to speedy trial supported the dismissal of his case with prejudice.

Lastly, Visintin asserted that the State had thwarted the purpose of bail, which is to ensure that the defendant is present at trial while also affording the defendant freedom from harassment and confinement. Although he posted bail, Visintin contended, he was arrested two more times and a fugitive warrant was wrongly obtained in another state based on inaccurate information. Visintin concluded that requiring the posting of bail multiple times for the same matter violates the Eighth Amendment to the U.S. Constitution and article I, section 12 of the Hawai'i Constitution.

Opposing Visintin's motion to dismiss, the State described the "unique" procedure employed in the district court of the Fifth Circuit when the State does not file a charging

document by an established deadline.[12]  The State contended that it did not charge Visintin as it lacked adequate information to do so because the police reports were not forwarded to the prosecutor's office until the date when Visintin's bond was discharged.  Since no case numbers are created unless a charging document has been filed, the State asserted, there is no readily available mechanism to file a written dismissal of a case.  Therefore, the State submitted, the effect of the call list is a "de facto dismissal of the cases," and the period from the day after Visintin's bond was discharged until he was indicted was excluded from the time limit calculation under HRPP Rule 48(c)(6).  Alternatively, the State maintained that this period was excluded under HRPP Rule 48(c)(8) for good cause because the procedure employed in the Fifth Circuit prevented the State from filing a dismissal of the case before the first scheduled court date.

As to the claim of a constitutional speedy trial violation, the State argued that Visintin did not provide sufficient facts demonstrating actual prejudice and that he had not previously asserted his right to a speedy trial.  Upon balancing the four factors set forth in Barker v. Wingo, 407

---

[12]     A detailed summary of this procedure is set forth infra.

U.S. 514 (1972), the State concluded that Visintin's right to speedy trial under the federal and state constitutions was not violated.

Finally, the State submitted that Visintin's argument as to excessive bail was without merit because the State had not charged him by the calendar call date, and his bond was discharged. Any argument by Visintin that he did not receive notice of the dismissal, the State added, was misplaced given that defense counsel knew before the calendar call proceeding that no complaint would be filed.

## 2. Hearing on the Motion to Dismiss

At the hearing on Visintin's motion, the State requested that the court take judicial notice that, inter alia, the prosecutor assigned to Visintin's case was in trial from December 3 to December 11, 2012, and from January 7, 2013, to March 6, 2013. The court questioned whether the prosecutor's work schedule was a sound basis for the delay, stating that the court was not aware of any cases in which the prosecutor's workload justified a delay in bringing a defendant to trial.[13]

---

[13] The court concluded that it would take judicial notice of the presented facts but that it was inclined not to give these facts any weight. Prior to the hearing on the motion to dismiss, the State filed a notice of intent requesting that the court also take judicial notice that 2012 was an election year for the prosecutor's office, that the new prosecutor was elected on November 6, 2012, and that the new prosecutor took office on December 3, 2012.

The State then called Vera Tabe, court administrator of the Fifth Circuit, to testify about the "calendar call procedure" that the district court of the Fifth Circuit has adopted. Tabe testified that, after a defendant posts bail or bond or is released on his or her own recognizance, the district court receives an original BBRA from the Kauai Police Department, which is file-stamped and placed in a "pending file" (a lateral drawer). A criminal number is not assigned to a case until a complaint is filed by the prosecutor's office. When the State does not file a charging document by 12:00 p.m. on Monday of the week of the scheduled court date, the case is placed on the calendar call list, an internal document that notes the defendant's name, charge, and method of release.

At the scheduled proceeding, Tabe continued, the judge reads the names on the call list and informs the defendants that no formal charges have been filed and that they will be served with documents indicating where and when to appear if there are charges filed in the future. If cash bail has been posted, there is an unfiled "order" that is provided to the fiscal office to refund the cash. If a bond was posted, "the judge just discharges the bond," meaning "there is nothing more on that bond."

Tabe explained that no document is filed by either the court or the clerk as to any action taken regarding the bail or

13

bond and no notation is made on the calendar call list regarding the discharge.  Additionally, Tabe stated that no written notice is provided to the defendant or defense counsel when a bond is discharged and nothing is sent to the bonding company.

To Tabe's knowledge, the State has never attempted to request a written dismissal of a case that has been placed in the pending file, although defendants commonly file motions under the bail/bond receipt number seeking permission to travel.  Tabe acknowledged that, after the case is placed on the calendar call list, circuit court staff "[do not] know what actually happens to the case."[14]  These unwritten "court rules" relating to the calendar call procedure, Tabe explained, are based on an agreement between the courts and the prosecutor's office.

Following Tabe's testimony, the circuit court denied Visintin's motion to dismiss, relying solely on HRPP Rule 48.  The court found that the period from the calendar call date to the date of Visintin's indictment was excluded under HRPP Rule 48(c)(6), reasoning that the purpose of the calendar call list is to notify "defendants who have been arrested . . . that their case is not active and is being dismissed."  Based on this finding, the court concluded that 180 qualifying days had not

_____

[14]    There is no consequence for a defendant whose name is on the call list who does not appear for the calendar call.

passed since Visintin's arrest.[15]  The court did not make any findings as to Visintin's contentions that his constitutional right to speedy trial and right against excessive bail had been violated.

### D.  No Contest Plea and Circuit Court Judgment

On September 16, 2013, Visintin pleaded no contest to the charge of place to keep pistol or revolver, which plea was made conditional on his right to appeal any pretrial rulings, and the State dismissed the unregistered firearm charge.[16]  The court sentenced Visintin to five years of probation, with a condition of sixty days in jail in addition to time previously served.  The circuit court entered its judgment of guilty conviction and probation sentence on January 30, 2014.[17]

### II.  APPEAL

Visintin timely appealed to the Intermediate Court of Appeals (ICA) from the circuit court's denial of the motion to dismiss and the judgment.  In a published opinion, the ICA vacated the circuit court's judgment and remanded the case to the circuit court for dismissal, with or without prejudice, as

---

[15]  The court directed the State to prepare an order regarding its oral ruling.  However, no such order is found in the record on appeal.

[16]  The court denied Visintin's motion for deferred acceptance of his nolo contendere plea.

[17]  In an order filed on February 19, 2014, the court granted Visintin's motion for stay of execution of sentence pending appeal.

determined by that court pursuant to HRPP Rule 48.  State v. Visintin, 142 Hawai'i 126, 140, 414 P.3d 178, 192 (App. 2018).

The ICA determined that, based on the plain language of HRPP Rule 48(b)(1) and the record, the calendar call procedure did not stop the Rule 48 clock from running.  Id. at 138, 414 P.3d at 190.  Hawai'i Supreme Court precedents have acknowledged that HRPP Rule 48 is modeled after section 12-2.2(a) of the American Bar Association Standards for Criminal Justice (2d ed. Supp. 1986), the ICA stated, under which the key inquiry in the speedy trial calculation is whether the defendant is "held to answer" for an offense through custody, bail, or recognizance.  Visintin, 142 Hawai'i at 138-39, 414 P.3d at 190-91 (citing State v. White, 92 Hawai'i 192, 199, 990 P.2d 90, 97 (1999)).  Reasoning that the purpose of the Rule is to "prevent long periods of detention, conditional release, personal anxiety, and public suspicion," the ICA held that a defendant's reasonable belief that he or she was being held to answer was sufficient to cause the HRPP Rule 48 clock to continue to run.  Id. at 139, 414 P.3d at 191 (quoting ABA Standards for Criminal Justice, § 12-2.2(a) cmt. at 12-21 (2d ed. Supp. 1986)).  Because the record did not reflect that Visintin was notified that his posted bond was discharged or that there was a change in his bail status, the ICA held, "the effect is that he

16

reasonably believed he was still 'held to answer' for the offense asserted upon his arrest." Id.

In addition, the ICA determined that the calendar call procedure should not be construed as a de facto dismissal of Visintin's case because it would contravene the requirements of HRPP Rule 48. Id. The plain text of HRPP Rule 48(a),[18] the ICA reasoned, indicates that a prosecutor's dismissal of a charge must include a document filed with the court. Id. at 139-40, 414 P.3d at 191-92. The ICA held that, under the calendar call procedure, there is neither a document "filed" nor a "charge" to be dismissed, and the procedure thus cannot be considered a dismissal under HRPP Rule 48(c)(6). Id. Additionally, the ICA held that the State had not made a showing of good cause under HRPP Rule 48(c)(8).[19] Id. at 140, 414 P.3d at 192.

Accordingly, the ICA held that the circuit court was required to dismiss the charges pursuant to HRPP Rule 48 because

---

[18]   HRPP Rule 48(a) provides, "The prosecutor may by leave of court file a dismissal of a charge and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."  HRPP Rule 48(a) (underlining added).

[19]   Chief Judge Nakamura dissented from this ruling, maintaining that, given the longstanding use of the calendar call procedure, the prosecutor knew that not filing a charge by the deadline "will effectively lead" to its dismissal, adding that the defense attorney should also be aware that such a failure meant no charge was pending and the arrested person was free to leave. Visintin, 142 Hawai'i at 146-47, 414 P.3d at 198-99 (Nakamura, C.J., concurring and dissenting). As to Visintin in particular, the dissent asserted that any lack of notice was due to his failure to appear as directed in his bail/bond receipt. Id. at 147, 414 P.3d at 199.

none of the rule's exclusions were applicable. Id. The ICA limited its ruling to the circumstances in this case and stated that it did "not reach the question of the type of notice that must be given to a defendant when he or she is released or discharged from bail." Id. at 140 n.16, 414 P.3d at 192 n.16. On remand, the ICA directed that the circuit court exercise its discretion to determine whether the charges should be dismissed with or without prejudice. Id. at 140, 414 P.3d at 192.

Turning to the constitutional speedy trial challenge, the ICA found that the circuit court had not addressed Visintin's constitutional speedy trial right and thus had implicitly rejected it when the court denied Visintin's motion to dismiss on Rule 48 grounds. Id. The ICA then considered the merits of the challenge. The ICA applied the four-part test set forth in Barker v. Wingo, 407 U.S. 514 (1972), to determine whether Visintin's constitutional speedy trial right was violated. Visintin, 142 Hawai'i at 140-42, 414 P.3d at 192-94. After concluding that the length of the delay was sufficient to warrant considering the remaining factors, the ICA determined that the reasons for the delay, the timing and consistency of Visintin's demand for a speedy trial, and the amount of prejudice the delay caused Visintin all weighed in favor of the

State.[20]  Id.  Thus, the ICA held that Visintin's constitutional right to speedy trial was not violated.  Id.

As to Visintin's final contention on appeal, the ICA pointed out that Visintin provided no authority for the assertion that a defendant whose right against excessive bail has been violated is entitled to dismissal of criminal charges. Id. at 143, 414 P.3d at 195.  The ICA therefore held that "there is no independent basis for dismissing the criminal charges against Visintin based on his claim of excessive bail."  Id.

Both the State and Visintin filed applications for writs of certiorari from the ICA's decision.  We accepted both applications.

### III.  STANDARDS OF REVIEW

> A trial court's findings of fact (FOFs) in deciding an HRPP Rule 48(b) motion to dismiss are subject to the clearly erroneous standard of review. . . . However, whether those facts fall within HRPP Rule 48(b)'s exclusionary provisions is a question of law, the determination of which is freely reviewable pursuant to the "right/wrong" test.

State v. Samonte, 83 Hawaiʻi 507, 514, 928 P.2d 1, 8 (1996).

This court reviews questions of constitutional law under the right/wrong standard.  State v. Davis, 133 Hawaiʻi 102, 111, 324 P.3d 912, 921 (2014) (citing State v. Jenkins, 93 Hawaiʻi 87, 100, 997 P.2d 13, 26 (2000)).

---

[20]    The ICA's reasoning as to each factor is discussed in greater length infra, § IV-B-1.

## IV.   DISCUSSION

### A.  State's Application for Writ of Certiorari

On certiorari, the State contends that the contested period was excludable under HRPP Rule 48(c)(6) or, alternatively, HRPP Rule 48(c)(8).  These arguments are addressed in turn below.

### 1. The Period Between the Calendar Call Proceeding and the Indictment Date is not Excluded under HRPP Rule 48(c)(6)

Under HRPP Rule 48(b), trial must commence within six months "from the date of arrest if bail is set or from the filing of the charge, whichever is sooner."  The parties agree that bail was set following Visintin's initial arrest, thereby starting the clock from the date of arrest for purposes of HRPP Rule 48(b).  See State v. Visintin, 142 Hawai'i 126, 138, 414 P.3d 178, 190 (App. 2018).  HRPP Rule 48(c)(6), however, excludes from the computation of time for trial commencement "the period between a dismissal of the charge by the prosecutor to the time of arrest or filing of a new charge, whichever is sooner, for the same offense."  The State contends that the more-than-seven-month period from the calendar call proceeding to the date of Visintin's indictment is excluded under HRPP Rule 48(c)(6) because the calendar call procedure effectively dismissed Visintin's case.

The ICA in this case correctly determined that the district court's calendar call procedure cannot be construed as a de facto dismissal because it would contravene the plain language of HRPP Rule 48. <u>Visintin</u>, 142 Hawaiʻi at 139-40, 414 P.3d at 191-92. HRPP Rule 48(a) sets forth the procedure by which a prosecutor may dismiss a case and thereby obtain tolling under HRPP Rule 48(c)(6). The rule states that "a prosecutor may <u>by leave of court</u> <u>file</u> a dismissal of a <u>charge</u> and the prosecution shall thereupon terminate." HRPP Rule 48(a) (emphases added). Under the calendar call procedure, there is no "charge" to be dismissed because charges have not yet been initiated. There also is nothing "filed," which by its plain meaning indicates the submission of a written document. See Hawaiʻi Rules of Electronic Filing (HREF) Rules 1.1, 1.4 (2010) (defining "conventionally file" and "electronic filing" to mean "the submission of paper documents and physical exhibits to the clerk for filing in the court record" and "the submission of documents by authorized JEFS Users for docketing and storage in JIMS," respectively); HRPP Rule 2.3 (2012) (cross-referencing the HREF for definitions). Additionally, the prosecution does not obtain leave from the court prior to employing the calendar call procedure as is required for the dismissal of charges under HRPP Rule 48(a). The calendar call procedure is therefore not a

dismissal by the prosecutor for purposes of HRPP Rule 48, and it cannot form the basis for tolling under HRPP Rule 48(c).[21]

The ICA indicated, however, that the result would have been different had the record established that Visintin was notified that his bond was discharged or that his bail status had changed. Relying on section 12-2.2(a) of the American Bar Association Standards for Criminal Justice (2d ed. Supp. 1986), the ICA held that the HRPP Rule 48 clock continued to run because Visintin "reasonably believed he was still 'held to

_____

[21] It is notable that, prior to 2010, many procedures in Hawai'i circuit, family, and district courts were governed by a range of informal administrative orders and memoranda that commonly set forth individualized local practices not unlike the calendar call procedure utilized in the present case. See In re Bettencourt, 126 Hawai'i 26, 28, 265 P.3d 1122, 1124 (2011). Like the calendar call procedure, the various administrative orders and memoranda caused much confusion and were oftentimes in conflict with Hawai'i statutes, our precedents, or our duly promulgated court rules. See id.; Price v. Obayashi Haw. Corp., 81 Hawai'i 171, 178, 914 P.2d 1364, 1371 (1996). And because the plethora of regulations was not easily navigated, they created inconsistent results and hindered public access to our justice system.

Cognizant of these difficulties, Chief Justice Ronald T.Y. Moon issued an order rescinding all statewide circuit, family, and district court administrative orders or memoranda. Order, In Re Statewide Court Administrative Orders and Memoranda (Haw. June 9, 2010), http://www.courts.state.hi.us/docs/sct_various_orders/order35.pdf. The order noted that many of the administrative orders and memoranda contained "requirements that are more appropriate for court rules than for administrative orders and memoranda." Id. This is because the Hawai'i Constitution reserves to the Hawai'i Supreme Court the power to "promulgate rules . . . relating to process, practice, [and] procedure." Haw. Const. art. VI, § 7.

The calendar call employed in the present case resembles the rescinded administrative orders in many respects and possesses the same potential to create inconsistent results, hinder access to justice, and impinge on this court's constitutional authority. Further, the problems created by these types of administrative practices are compounded when the procedure is not even memorialized in writing, as in this case.

answer' for the offense asserted upon his arrest." Visintin, 142 Hawai'i at 139, 414 P.3d at 191. Accordingly, the ICA limited its ruling "to the circumstances in this case" and did "not reach the question of the type of notice that must be given to a defendant when he or she is released or discharged from bail." Id. at 140 n.16, 414 P.3d at 192 n.16.

But this reasoning is predicated on the incorrect assumption that Visintin was in fact no longer held to answer following the calendar call proceeding. Although it is true that, under our precedents, the HRPP Rule 48 trial clock does not run when a defendant is released outright without bail being set, see State v. Johnson, 62 Haw. 11, 12, 608 P.2d 404, 405 (1980), no actual order discharging Visintin's bail and releasing him outright was ever entered in this case.

That a written order must be filed in this context--or at the very least a written notice of entry of the decision or ruling--is indicated by the plain language of the HRPP. HRPP Rule 44A (2011) provides in relevant part as follows:

> After the decision or ruling of the court following a hearing on a motion, the clerk shall note the decision or ruling on the docket. The filing of the written decision or ruling, or in the event of an oral decision or ruling, the filing of the written notice of entry of the decision or ruling, in the office of the clerk constitutes entry of the order. The decision or ruling or notice of entry shall be signed by the judge or by the clerk, if the judge so directs, provided that for purposes of this rule, an oral order granting an oral motion is entered when the court's oral order is entered by the clerk on the electronic docket.

(Emphasis added.)  The calendar call proceeding operates as a hearing on the State's motion to refund bail or discharge a bond and to release the defendant outright.  See Motion, Black's Law Dictionary (10th ed. 2014) ("A written or oral application requesting a court to make a specified ruling or order.").  Alternatively, the proceeding may be viewed as a hearing on the court's own motion or a joint motion of the court and the State.

Regardless of whom the motion is viewed as originating from, HRPP Rule 44A requires either the district court or court clerk to file a written order or a written notice of the ruling for the decision to be considered "entered."[22]  It must follow that, even were we to construe the circuit court's general statements addressing multiple defendants during the calendar call procedure as an oral order, that order would be ineffective because it was not accompanied by a written notice of entry.  And without an effective order, Visintin remained held to answer as a matter of law, notwithstanding any administrative procedural actions or his notice thereof.

Sound policy considerations underlie HRPP Rule 44A's requirements.  The absence of a written order or notice of entry

_____

[22]    Although criminal charges have not yet been filed against defendants involved in the calendar call procedure, the HRPP nonetheless apply because they "govern the procedure in the courts of the State in all penal proceedings," with only limited exceptions not applicable here.  HRPP Rule 1(a) (2012) (emphasis added).

denies future courts an adequate record of events that occurred under the jurisdiction of district courts in the Fifth Circuit. The present case is emblematic of the problems that can arise under such conditions. Because no formal order was filed in Visintin's case, the circuit court lacked any meaningful ability to review judicial records following Visintin's indictment when it considered the State's request for an arrest warrant and bail in the amount of $10,000.

Despite the fact that the earlier posted bond had been discharged because the prosecutor was unprepared to proceed with the case, the circuit court's outstanding warrant resulted in Montana issuing a "fugitive" warrant against Visintin. Visintin's life was subject to significant upheaval when he was arrested by Montana law enforcement as a fugitive from justice, incarcerated, and again required to post bail. At a minimum, had there been a written order or notice of entry discharging Visintin's initial bond and formally releasing him from custody, the issuance of the fugitive warrant in this case may have been avoided.

Additionally, were we to hold that the calendar call proceeding was a legally effective order, the absence of a written order or notice of entry of the ruling would force a person released pursuant to the procedure to obtain the transcript or recording of the proceeding to acquire

documentation that he or she is no longer being held to answer for the crime underlying the person's arrest. A defendant should not be required to take such measures to obtain information affecting one's fundamental liberty that may easily be relayed through a written order or notice of entry. Nor should the defendant, counsel, or the public be required to rely upon a court's verbal statements indicating that a felony case will not be going forward or that the restraints of bail conditions no longer apply.

Further compounding the problematic nature of the calendar call procedure is that the procedure itself is unwritten and thus not readily accessible to public understanding or scrutiny except to those with inside knowledge.[23] Pro se defendants or those with counsel unfamiliar with the Fifth Circuit's "unique" procedure are unlikely to

---

[23]     Inside knowledge as to the discharge of bond figured prominently in the reasoning of Chief Judge Nakamura's concurring in part and dissenting in part opinion (dissent). The dissent argued that, given the longstanding use of the calendar call procedure, the "prosecutor knows" that not filing a charge by the deadline will effectively lead to its dismissal, and "criminal defense counsel should be aware that under the calendar call procedure" the State's failure to formally charge a defendant by a week before the calendar call appearance date means that no charge is pending, any bail will be returned, and any bail bond will be discharged. Visintin, 142 Hawai'i at 146–47, 414 P.3d at 198–99 (Nakamura, C.J., concurring and dissenting). As discussed supra, note 21, the adoption of informal court procedures is problematic even when their details are published in written form because, inter alia, they require uninitiated litigants to navigate a maze of administrative procedures and thereby impair public access to our justice system. We likewise reject an approach that is reliant upon the presumed knowledge of counsel as to unwritten, localized court procedures.

understand the legal significance the procedure is intended to hold without a written document, leaving them uninformed as to the status of the criminal claim against them.

The State argues that requiring a written order to discharge bail will leave it with no established method of disposing of a case under these circumstances. It is not possible to file a written bail discharge order before a written complaint is filed, the State contends, because there is no case number under which to file the order. But the filing of written orders prior to formal charging is both routine and expressly authorized under our court rules.

HRPP Rule 5(a)(2) (2012), for example, provides the following:

> (2) PROBABLE CAUSE DETERMINATION UPON ARREST WITHOUT A WARRANT. As soon as practicable, and, Rule 45 notwithstanding, not later than 48 hours after the warrantless arrest of a person held in custody, a district judge shall determine whether there was probable cause for the arrest. . . . If probable cause is found as aforesaid, an appropriate order shall be filed with the court as soon as practicable. If probable cause is not found, or a proceeding to determine probable cause is not held within the time period provided by this subsection, the arrested person shall be ordered released and discharged from custody.

(Emphases added.) Thus, this rule provides that when a person has been arrested without a warrant and remains in custody, the court shall, no later than forty-eight hours after the arrest, determine whether there is probable cause for the arrest. If probable cause is found, the court is required to file an order

as soon as practicable. Similarly, if probable cause is not found or a proceeding to determine probable cause is not held within the time provided by HRPP Rule 5(a)(2), the arrested person "shall be <u>ordered</u> released and discharged from custody." (Emphasis added.) In other words, when probable cause has not otherwise been determined through a preliminary hearing or indictment, the district court must file an order whenever a person is arrested without a warrant and held in custody for more than forty-eight hours after arrest, notwithstanding the lack of formal charges in the case.

This authority of the district court to issue orders prior to the filing of a charge is also recognized in HRPP Rule 5(c)(8), which provides as follows: "The district court, as authorized by Hawaiʻi Revised Statutes, chapter 804, may admit the defendant to bail or modify bail any time prior to the filing of the written order committing the case to circuit court." HRPP Rule 5(c)(8) (2014). Indisputably, admission to bail or modification of bail requires a written order of the court. The court's authority to modify bail prior to the filing of the charge was in fact referenced by the court administrator, who stated that defendants commonly file motions to the court under the BBRA number seeking permission to travel. If motions and orders can be filed under the BBRA number, nothing precludes the district court from filing a written order or notice of

entry under that number to refund bail, discharge a bond, and release the defendant outright from custody.  Accordingly, this court will not defer to the established procedure of the district court in the Fifth Circuit with regard to cases on the calendar call list--which does not include disposition by a written order or notice of entry--merely because a charge has not been filed in the case.

In summary, because the calendar call procedure involves matters with significant and consequential effects, a verbal directive that is not memorialized is ineffective as an "order."  To hold otherwise would create great uncertainty by denying future courts, defendants, and the public a definitive record of proceedings.  And, as this case demonstrates, the absence of a written order or notice of entry affects the integrity of the procedure by which judicial warrants issue and hampers a court's duty to promote a fair process.  This is why the filing of a written order--or at the very least a written notice of entry--is both permitted and explicitly called for under our court rules.[24]

---

[24] See HRPP Rule 2 (1977) ("These rules are intended to provide for the just determination of every penal proceeding.  They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.").

Because there was no written order or notice of entry of an oral order discharging Visintin's bond and releasing him outright, Visintin remained held to answer for purposes of the HRPP Rule 48 trial clock.  And, because no dismissal of charges occurred, the period between the calendar call procedure and the date of his indictment is not excluded under HRPP Rule 48(c)(6).

## 2. The Period Between the Calendar Call Proceeding and the Indictment Date is not Excluded under HRPP Rule 48(c)(8)

The State contends in the alternative that the period between the calendar call proceeding and the date of Visintin's indictment is excluded based on good cause.  HRPP Rule 48(c)(8) provides that "other periods of delay for good cause" shall be excluded from the computation of time for trial commencement. This court has defined "good cause" as "a substantial reason which affords a legal excuse."  State v. Senteno, 69 Haw. 363, 368, 742 P.2d 369, 373 (1987) (citing State v. Estencion, 63 Haw. 264, 267, 625 P.2d 1040, 1042 (1981)).  The good cause provision of HRPP Rule 48(c), we have held, "is provided to take care of unanticipated circumstances" and events that are not reasonably foreseeable.  State v. Abregano, 136 Hawai'i 489, 497, 498, 363 P.3d 838, 846, 847 (2015) (quoting State v. Gillis, 63 Haw. 285, 288, 626 P.2d 190, 192 (1981)).  It "is not to be used to excuse a lack of diligence on the part of the government to comply with Rule 48."  Id. (quoting Gillis, 63 Haw. at 288, 626

P.2d at 193). "Whether a period of time is excludable as 'good cause' under HRPP Rule 48(c)(8) is dependent on the facts of each case." Id. at 498–99, 363 P.3d at 847–48 (citing State v. Herrera, 63 Haw. 405, 409, 629 P.2d 626, 629 (1981)).

On certiorari, the State argues that Visintin's failure to appear at the scheduled court proceeding constitutes good cause to exclude the delay between the calendar call proceeding and the date of Visintin's indictment under HRPP Rule 48(c)(8). The State contends that Visintin chose not to attend the hearing even though he was ordered to do so.

In State v. Choy Foo, 142 Hawai'i 65, 71-72, 414 P.3d 117, 123-24 (2018), the defendant argued that his appearance without counsel at arraignment was not an unanticipated circumstance constituting good cause. We agreed, holding that it was "'reasonably foreseeable' that many defendants will make their initial appearance in district court without an attorney." Id. at 76, 414 P.3d at 128. Similarly, it is not an unanticipated circumstance that many defendants will not appear at the calendar call given that, under the system that has been established in the Fifth Circuit, there is no consequence for a defendant who does not appear at the calendar call.

Moreover, as discussed above, the calendar call procedure would not have resulted in the stopping of the HRPP Rule 48 trial clock even had Visintin been present at the

calendar call proceeding because no written order or notice of entry was filed discharging Visintin's bond. Visintin's nonattendance was therefore irrelevant to the State's obligation to comply with the HRPP Rule 48 time limit and cannot constitute good cause for its failure to do so. Accordingly, the ICA did not err in vacating the circuit court's judgment because the contested period was not excluded under HRPP Rule 48(c)(8).[25]

**B.    Visintin's Application for Writ of Certiorari**

Visintin contends on certiorari that the circuit court erred in denying his constitutional speedy trial motion and that his right against excessive bail was violated, which should have resulted in the dismissal of the criminal charges against him.

**1. Speedy Trial**

The Sixth Amendment to the United States Constitution and article I, section 14 of the Hawaiʻi Constitution guarantee a defendant in a criminal case the right to a speedy trial in all

---

[25]    It is also noted that the circuit court judgment prescribed a jail term "in addition to time served." However, HRS § 706-671(1) provides in relevant part as follows:

> When a defendant who is sentenced to imprisonment has previously been detained in any State or local correctional or other institution following the defendant's arrest for the crime for which sentence is imposed, such period of detention following the defendant's arrest shall be deducted from the minimum and maximum terms of such sentence.

HRS § 706-671(1) (2012) (emphasis added).

prosecutions. State v. Lau, 78 Hawai'i 54, 62, 890 P.2d 291, 299 (1995). Whether the defendant's right to a speedy trial has been violated is determined by applying the four factors articulated in Barker v. Wingo, 407 U.S. 514 (1972): "(1) length of the delay; (2) reasons for the delay; (3) defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant." Lau, 78 Hawai'i at 62, 890 P.2d at 299 (citing Barker, 407 U.S. at 530). No one factor "is to be regarded as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." Id. (quoting State v. Wasson, 76 Hawai'i 415, 419, 879 P.2d 520, 524 (1994)). Rather, the factors are related "and must be considered together with such circumstances as may be relevant." Id. (quoting Wasson, 76 Hawai'i at 419, 879 P.2d at 524). When a defendant's right to a speedy trial has been violated, the only remedy is dismissal with prejudice. Id.

As to the first factor, length of delay, the ICA held in this case that the more-than-twelve-month period between Visintin's arrest and the filing of the motion to dismiss was sufficient to warrant inquiry into the other Barker factors. State v. Visintin, 142 Hawai'i 126, 141, 414 P.3d 178, 193 (App. 2018). With regard to the second factor, reasons for the delay, the ICA held that the State's proffered explanations--the

33

assigned prosecutor's unavailability and the leadership change at the prosecutor's office--were not "overwhelming justifications" but nonetheless provided "a reasoned basis for the delay and are weighted less heavily." Id. The ICA thus concluded that the second factor weighed slightly in favor of the State. Id. The ICA also determined that a portion of the delay, which spanned several months, was attributable to the time required to bring Visintin back to Hawai'i from Montana and was reasonable. Id. Turning to the third factor, assertion of the right to a speedy trial, the ICA held that this factor weighed in favor of the State because, other than the motion to dismiss, the record lacked a showing that Visintin actually desired a speedy trial. Id. at 141-42, 414 P.3d at 193-94.

Lastly, with respect to the fourth factor, prejudice to the defendant, the ICA held that Visintin did not submit "objective, contemporaneous evidence of anxiety, such as prompt and persistent assertion of the desire for a speedy trial coupled with a demonstrable basis for the court's believing the delay is traumatic." Id. at 142, 414 P.3d at 194 (quoting State v. Ferraro, 8 Haw. App. 284, 300, 800 P.2d 623, 632 (1990)). Further, the ICA determined that Visintin did not suffer oppressive pretrial incarceration, that he only alleged the possibility of prejudice--which was insufficient to establish a violation of the constitutional speedy trial right, and that the

twelve-month period of delay was not "exceedingly long."  Id.

Accordingly, the ICA held that Visintin's constitutional right

to a speedy trial had not been violated.  Id.

### a.    The ICA Erred in Considering Visintin's Constitutional Speedy Trial Claim on the Merits

After determining that the circuit court "implicitly

rejected" Visintin's argument regarding the right to a speedy

trial when it denied his motion to dismiss, the ICA considered

the merits of Visintin's constitutional speedy trial challenge.

Visintin, 142 Hawai'i at 140-42, 414 P.3d at 192-94.  However,

nothing in the record indicates that the circuit court

considered Visintin's argument regarding his constitutional

right to a speedy trial, let alone evaluated the four Barker

factors.  Instead, the circuit court relied solely on HRPP Rule

48 in denying Visintin's motion to dismiss.

Additionally, even assuming the circuit court

considered Visintin's argument regarding a constitutional speedy

trial violation, the court neither issued a written order

setting forth its findings or conclusions with respect to the

issue nor did it state any findings or conclusions on the record

when it denied the motion.

HRPP Rule 12(e) (2007) provides in relevant part,

"Where factual issues are involved in determining a motion, the

court shall state its essential findings on the record."

35

(Emphasis added.)  Visintin's motion to dismiss based on a constitutional speedy trial violation required the determination of factual issues that are part and parcel of the four Barker factors.  The circuit court, however, failed to make any factual findings as to the speedy trial motion.

This court has repeatedly stated that "cases will be remanded when the factual basis of the lower court's ruling cannot be determined from the record."  See, e.g., State v. Anderson, 67 Haw. 513, 514, 693 P.2d 1029, 1030 (1985) (remanding to the lower court after determining that the lower court granted the motion to suppress without having made any findings of fact); State v. Hutch, 75 Haw. 307, 331, 861 P.2d 11, 23 (1993) (holding that both trial courts committed reversible error in denying the defendant's HRPP Rule 48 motions without stating the "essential findings on the record"); see also State v. Rodrigues, 122 Hawai'i 229, 238, 225 P.3d 671, 680 (App. 2010) ("In the absence of the findings of fact required by HRPP Rule 12(e), it is not the role of the appellate court, in the first instance, to make determinations" as to such factual issues).  This is because "[factual] findings are imperative for an adequate judicial review of a lower court's conclusions of law."  Anderson, 67 Haw. at 514, 693 P.2d at 1030; accord Hutch,

75 Haw. at 331, 861 P.2d at 23; Rodrigues, 122 Hawaiʻi at 238, 225 P.3d at 680.

The ICA nevertheless considered Visintin's argument as to his constitutional speedy trial challenge. The ICA evaluated each of the four Barker factors and made a number of implicit or express factual findings in determining whether the factors weighed in favor of or against Visintin.

For example, regarding the second Barker factor, reasons for the delay, the ICA found that the State's proffered justifications--that the prosecutor was unavailable due to her trial schedule and that it was an election year--provided "a reasoned basis for the delay." Visintin, 142 Hawaiʻi at 141, 414 P.3d at 193. The ICA also determined that a portion of the delay was due to the time needed to bring Visintin back to Hawaiʻi from Montana following his indictment, which was "reasonable." Id. The circuit court, however, did not make any specific findings that these reasons were the actual causes of the delay. And, insofar as the ICA suggested that Visintin was responsible for the delay for his return to Hawaiʻi from Montana, this conclusion was contradicted by the circuit court's factual findings in ruling upon Visintin's HRPP Rule 48 argument. The court found that the State was responsible for the period of

delay between Visintin's indictment and the arraignment, not

Visintin.  The court stated as follows:

> Now, once the indictment is issued on April 25th to the period of August 6th, because the defendant is free to leave at that point in time, you cannot now say the defendant is making himself unavailable.  It would be inconsistent for the Court to have that type of ruling.  So the period between April 25th to August 6th is chargeable to the State.

The ICA never determined that this finding was clearly

erroneous, and the circuit court is certainly better positioned

than an appellate court to make factual findings as to the

causes of delay and the allocation of responsibility between the

parties.

Similarly, the ICA specifically found as to the fourth

factor, prejudice to the defendant, that Visintin did not suffer

oppressive pretrial incarceration, that he did not suffer

anxiety, and that he had only alleged the possibility of

prejudice, which the ICA stated was insufficient to establish a

violation of the speedy trial right.  Visintin, 142 Hawaiʻi at

142, 414 P.3d at 194.  However, the circuit court itself did not

make any findings as to whether Visintin had established

oppression, anxiety, or prejudice.  This was of particular

import here because Visintin alleged that he had suffered a

number of extreme, potentially anxiety-inducing circumstances

that were arguably caused by the State's delay in bringing the

case.  Visintin asserted that he was subject to multiple

arrests, including one in which heavily armed Marshals forced their way into his family home in Montana and forcibly detained Visintin and his mother. Visintin further contended that he endured false accusations of being a fugitive and was required to post bail multiple times. And the email exchanges between the deputy prosecutor and Visintin's counsel may suggest that Visintin was very concerned as to the impact of the prosecution on his prospects of becoming a police officer, a job for which he had invested much training and preparation. Whether these events occurred, were caused by the delay, and resulted in Visintin experiencing great anxiety were factual matters that should have been initially ascertained by a trial court and not by a court on appeal.

Thus, because "it is not the role of the appellate court, in the first instance, to make determinations" as to factual issues, the ICA erred in considering Visintin's constitutional speedy trial argument without the circuit court having made any findings of fact. Rodrigues, 122 Hawai'i at 238, 225 P.3d at 680.

**b. The ICA Applied Incorrect Principles of Law**

In improperly considering Visintin's constitutional speedy trial claim, the ICA did not correctly apply precedent relating to three Barker factors: reasons for the delay, assertion of the right to a speedy trial, and prejudice to the

defendant.  These three factors are accordingly addressed below to set forth principles applicable to the circuit court's determination should the speedy trial motion be further considered on remand.

### i. Reasons for the Delay

This court has stated, in accordance with the U.S. Supreme Court's decision in Barker, that different weights are assigned to different reasons in determining whether a delay of trial violates a defendant's constitutional speedy trial right. Lau, 78 Hawaiʻi at 63, 890 P.2d at 300 (citing Barker, 407 U.S. at 531).  "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government."  Id. (quoting Barker, 407 U.S. at 531).  "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  Id. (quoting Barker, 407 U.S. at 531).

When a defendant contributes in substantial part to the delay, we have held that the second Barker factor weighs in favor of the prosecution.  In State v. White, for instance, the defendant's various pretrial motions resulted in a delay of approximately four and a half months.  92 Hawaiʻi 192, 203, 990

P.2d 90, 101 (1999). Although the State's requests to continue trial resulted in a four-month delay, the White court determined that the State's requests did not appear to have been a deliberate attempt to delay trial. Id. Because the defendant was responsible for a substantial part of the delay, the court concluded that the second Barker factor weighed in favor of the State. Id. at 204, 990 P.2d at 102.

By contrast, when a delay results from a more neutral reason, we have held that the second Barker factor weighs in favor of the defendant. In Lau, the defendants contended that the reasons for the delay were court congestion and the State's determination to try every case involving a charge of driving under the influence of an intoxicant. 78 Hawai'i at 63, 890 P.2d at 300. In response, the State conceded that court congestion was present but argued that the evolution of caselaw in Hawai'i constituted "unique circumstances" that led to the backlog of cases. Id. The Lau court acknowledged that the State's contention had some merit, but found that there was no indication that the defendants were responsible for the delay in bringing the case to trial. Id. "[W]hile court congestion is a 'more neutral' reason that 'counts less heavily against the State than would a deliberate delay,'" the court held, "it nevertheless still tips the scales in favor of [the defendants],

since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id. (quoting Wasson, 76 Hawaiʻi at 420, 879 P.2d at 525). Thus, the Lau court concluded that the second Barker factor weighed in favor of the defendants. Id.

Even when the defendant is partially responsible for the delay, this court has held that the second Barker factor may tip in favor of the defendant. In State v. Dwyer, the defendant's trial was continued three times. One of the continuances was due to the defendant's counsel falling ill, and one was at the request of the State because it was unable to proceed to trial.[26] 78 Hawaiʻi 367, 371, 893 P.2d 795, 799 (1995). The Dwyer court found that there was no attempt by the State to deliberately delay the defendant's trial. Id. Nonetheless, it concluded that, on balance, the reasons-for-the-delay factor weighed in favor of the defendant. Id. Similarly, in Wasson, both the State and the defendant shared some responsibility for the delay in the defendant's trial. 76 Hawaiʻi at 419-20, 879 P.2d at 524-25. The reasons for the delay included court congestion, two failures to appear by the

---

[26] The court in Dwyer found that the record was insufficient to determine the reason for one of the continuances. State v. Dwyer, 78 Hawaiʻi 367, 371, 893 P.2d 795, 799 (1995).

defendant, and the defendant's two motions for continuances. Id.  This court held that, while court congestion was a "more neutral" reason that counted less heavily against the State and was offset to a degree by the defendant's own actions, the second Barker factor nonetheless tipped in favor of the defendant "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  Id. at 420, 879 P.2d at 525 (quoting Barker, 407 U.S. at 531).

In this case, although the ICA determined that the State was primarily responsible for the delay, it held that the reasons-for-the-delay factor weighed slightly in favor of the State.  Visintin, 142 Hawaiʻi at 141, 414 P.3d at 193.  The ICA held that the State's proffered justifications--that the assigned prosecutor was unavailable and that the prosecutor's office underwent a change in leadership--provided "a reasoned basis for the delay and are weighted less heavily."  Id.  The ICA did not directly state that Visintin was responsible for any portion of the delay between his arrest on August 7, 2012, and his arraignment on August 6, 2013, though the ICA appeared to

suggest the delay in returning Visintin to Hawai'i to stand trial may be attributable to him.[27] See id.

In Dwyer, the State moved to continue the trial because it was unable to proceed with the case, and we held that the second Barker factor tipped in favor of the defendant. 78 Hawai'i at 371, 893 P.2d at 799. Likewise, this court in Wasson weighed the second Barker factor in favor of the defendant when court congestion was alleged as a reason for the delay. 76 Hawai'i at 419, 879 P.2d at 524. The State submitted in this case that it could not proceed with trial because the assigned deputy prosecutor was busy with trials in other cases and there was a change in leadership at the prosecutor's office.[28] But the workload of a deputy prosecutor, the election of a new prosecutor, and court congestion all share common features in that they are in all but exceptional circumstances recurring, systemic, foreseeable, and ultimately the government's responsibility.

---

[27] As discussed supra, this suggestion is contrary to the circuit court's findings on the matter.

[28] At the hearing on the motion to dismiss, the circuit court appeared to reject the State's reason for the delay based upon the assigned prosecutor's trial schedule, stating that it was not aware of any cases in which the court "has said, 'Ms. [Prosecutor], you're busy, so we can infringe on defendant's right to, you know, a timely trial.'"

44

Hence, the ICA misapprehended applicable principles in evaluating the second Barker factor. Cf. State v. Hanawahine, 69 Haw. 624, 631, 755 P.2d 466, 470 (1988) (holding that the defendant's late arraignment that resulted from the assigned prosecutor's workload was "not good cause for the delay [under HRPP Rule 48(c)(8)] given that [the prosecutor's] problem is not that unusual" (citing State v. Gillis, 63 Haw. 285, 626 P.2d 190 (1981) (per curiam))); State v. Dunphy, 71 Haw. 537, 543, 797 P.2d 1312, 1315 (1990) (analyzing the defendant's due process argument and determining that the period of delay resulting from the "malfunctions in the staffing at the Prosecutor's Office, is unreasonable and inexcusable").

### ii. Assertion of the Right to a Speedy Trial

The ICA also incorrectly applied legal principles relating to the third Barker factor: the assertion of the right to a speedy trial. We have stated that "[a] defendant has no duty to bring himself [or herself] to trial; the [S]tate has that duty." Wasson, 76 Hawai'i at 420, 879 P.2d at 525 (alterations in original) (quoting Barker, 407 U.S. at 527). "Thus, a defendant does not waive his or her right to a speedy trial by failing to demand one." Id. (citing Barker, 407 U.S. at 526). However, the assertion of the right to a speedy trial "is entitled to strong evidentiary weight in determining whether

the defendant is being deprived of the right." Id. (quoting Barker, 407 U.S. at 531-32).

A defendant's motion to dismiss based on speedy trial "is 'tantamount to an assertion of his [or her] constitutional right to a speedy trial.'" Id. at 420-21, 879 P.2d at 525-26 (alteration in original) (quoting State v. Nihipali, 64 Haw. 65, 70 n.5, 637 P.2d 407, 412 n.5 (1981)). Nonetheless, the motion "does not necessarily indicate that the defendant actually wants to be tried immediately" unless accompanied by an alternative demand for a speedy trial. Id. at 421, 879 P.2d at 526 (citing United States v. Loud Hawk, 474 U.S. 302, 314 (1986)).

In concluding that this factor weighed in favor of the State, the ICA determined that nothing in the record, other than Visintin's motion to dismiss, indicated that Visintin asserted the right to a speedy trial. Visintin, 142 Hawai'i at 141-42, 414 P.3d at 193-94. The ICA's holding overlooks the significant circumstance that there appears to have been no conventional forum in which Visintin could have asserted the right to a speedy trial.

Although Visintin was arrested on August 7, 2012, he was not charged until more than seven months later on April 25, 2013. During the period between the arrest and the indictment, there was no pending charge against Visintin. Visintin aptly notes that it "is unfair to require that a defendant demand a

46

speedy trial after he has been accused, but then refuse to create an actual case in which defendant can make a timely demand." Without a pending charge and an arraignment to allow a trial to be set, there does not appear to have been any standard legal proceeding in which Visintin could have demanded a speedy trial. And when Visintin was finally arraigned on August 6, 2013, he filed a motion to dismiss based on speedy trial grounds within two weeks--on August 20, 2013.[29] Thus, the ICA erred in concluding this factor weighed in favor of the State without considering whether Visintin raised the issue of speedy trial as soon as was practicable under the circumstances.[30]

### iii. Prejudice to the Defendant

Prejudice to the defendant "should be assessed in the light of the interests of defendants [that] the speedy trial right was designed to protect." Lau, 78 Hawai'i at 64, 890 P.2d at 301 (quoting Barker, 407 U.S. at 532). These interests are the prevention of oppressive pretrial incarceration, the

---

[29]    Although the motion was not accompanied by an alternate demand for a speedy trial, more than a year had already elapsed by the time Visintin was arraigned and a demand for speedy trial could have been made. A period of even six months delay is deemed sufficient to warrant an inquiry into the remaining Barker factors, and thus even a demand for immediate trial would not have resulted in a "speedy" trial under our precedents. Lau, 78 Hawai'i at 63, 890 P.2d at 300.

[30]    Indeed, the State itself acknowledged in its answering brief to the ICA that the third Barker factor potentially weighed in favor of Visintin.

minimization of the defendant's anxiety and concern, and the preservation of the ability to mount an effective defense.  Id.

With regard to anxiety, the ICA concluded in this case as follows:

> The government will prevail unless the defendant offers objective, contemporaneous evidence of anxiety, such as prompt and persistent assertion of the desire for a speedy trial coupled with a demonstrable basis for the court's believing the delay is traumatic.  State v. Ferraro, 8 Haw. App. 284, 300, 800 P.2d 623, 632 (1990) (citation and internal brackets omitted).  Visintin has not offered such evidence here.

Visintin, 142 Hawai'i at 142, 414 P.3d at 194 (emphases added).

While the ICA correctly stated that to demonstrate anxiety, the defendant must offer objective, current evidence, the ICA incorrectly applied Ferraro to require that Visintin offer evidence that he demanded a speedy trial in order to demonstrate anxiety.

We have stated the following in addressing the issue of prejudice in the speedy trial context:

> [W]holly aside from possible prejudice to a defense on the merits, [inordinate delay] may seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

Lau, 78 Hawai'i at 65, 890 P.2d at 302 (alterations in original) (quoting Moore v. Arizona, 414 U.S. 25, 27 (1973)).  Thus, because anxiety may be based on a variety of circumstances, evidence of anxiety may take a variety of forms.  The Ferraro

48

court specifically recognized this fact when it used the phrase "such as," followed by examples of what may constitute evidence of anxiety depending on the circumstances of the case. 8 Haw. App. at 300, 800 P.2d at 632.

Although we have in the past held that a defendant's demand for a speedy trial may be relevant evidence of anxiety, we have never indicated that it is a necessary precondition for a showing of anxiety.[31] When the defendant has raised financial circumstances as a basis for asserted anxiety, for example, Hawai'i courts have considered whether there was a demand for speedy trial as evidence that the defendant was indeed impacted by the alleged financial hardship. In Lau, the defendants contended that they suffered from anxiety due to increased automobile insurance premiums. 78 Hawai'i at 64, 890 P.2d at 301. In assessing whether the prejudice factor weighed in favor of the defendants, this court considered, inter alia, that the defendants had not asserted their right to a speedy trial and concluded that the record did not show that the alleged financial hardship was sufficient to warrant a finding of prejudice to the defendants. Id. at 65, 890 P.2d at 302.

---

[31] Such a holding would render the fourth Barker factor largely redundant, as its parameters would almost entirely overlap with the third Barker factor, which directly considers whether the defendant has asserted the right to a speedy trial. A failure to demand a speedy trial would thus negate both factors, regardless of any actual prejudice the defendant demonstrates.

49

In this case, whether Visintin demanded a speedy trial is not an appropriate consideration as evidence of anxiety. Visintin did not allege a financial hardship as a basis for any asserted anxiety.

Moreover, as discussed supra, Visintin could not have readily demanded a speedy trial during the period between the initial court proceeding and the arraignment, as there was no pending charge against him. Thus, the ICA misapprehended Ferraro by improperly considering the absence of an assertion of the right to a speedy trial by Visintin as a factor indicating that there was no evidence of anxiety.

### 2. Excessive Bail

Under HRS § 804-1 (1993), bail is defined as "the signing of the recognizance by the defendant and the defendant's surety or sureties, conditioned for the appearance of the defendant at the session of a court of competent jurisdiction to be named in the condition, and to abide by the judgment of the court." While the amount of bail rests within the discretion of the judge, HRS § 804-9 (1993), article I, section 12 of the Hawaiʻi Constitution prohibits excessive bail. Sakamoto v. Won Bae Chang, 56 Haw. 447, 450, 539 P.2d 1197, 1199 (1975). "In all cases, the officer letting to bail should consider the punishment to be inflicted on conviction, and the pecuniary circumstances of the party accused." HRS § 804-9.

The ICA declined to reach Visintin's argument that his right against excessive bail was violated, concluding that "there is no independent basis for dismissing the criminal charges against Visintin based on his claim of excessive bail." State v. Visintin, 142 Hawai'i 126, 143, 414 P.3d 178, 195 (App. 2018). The ICA's ruling may potentially be interpreted overbroadly as an apparent categorical exclusion on dismissal based on violations of a defendant's bail-related rights. However, courts in other jurisdictions have held that the denial of bail may warrant dismissal of the case with prejudice under certain circumstances. For example, in City of Jamestown v. Erdelt, the defendant was arrested for driving under the influence of alcohol (DUI) and was detained for a period of eight hours before being allowed to post bail. 513 N.W.2d 82, 83 (N.D. 1994). The trial court granted the defendant's motion to dismiss the DUI charge. Id. The Supreme Court of North Dakota affirmed the trial court's dismissal "as a sanction for institutional non-compliance and systematic disregard of the law." Id. at 85-86 (citations omitted). The court reasoned that the arresting officer had detained the defendant without making an individualized determination of the intoxication and dangerousness of the defendant--in violation of the bail statutes and case precedent. Id. at 86.

51

Similarly, in State v. Cuchy, DUI arrestees were jailed for twelve hours, based on the sheriff department's policy, before being allowed to post bond. 19 P.3d 152, 153 (Kan. 2001). The Kansas Supreme Court determined that the officers made no individualized determinations of whether the arrestees were intoxicated and dangerous, instead detaining them based solely on the blanket policy. Id. at 158. The court held that the defendants were denied their constitutional right to make bail. Id. However, because "the officers did not disregard a previous ruling or decision by the district court in detaining the defendants," the court concluded that dismissals were not warranted. Id. at 159-60.

In light of Erdelt and Cuchy, there is legal authority for the proposition that criminal charges against a defendant may be dismissed based on violations of the right to bail under certain circumstances, including when law enforcement denies bail pursuant to a blanket policy of jailing DUI arrestees for several hours. Nevertheless, even if this court applied the holding in Erdelt and Cuchy, a dismissal of the charges against Visintin would not be warranted. While the circumstances in this case raise serious concerns as to the number of times Visintin was subject to arrest and the posting of bail for a single incident, the circumstances are not similar to those presented in Erdelt and Cuchy. Cf. Lock v. Moore, 541 N.W.2d

84, 87 (N.D. 1995) (unlike in <u>Erdelt</u>, "this is not a case of a person meeting all the bail requirements but nonetheless being kept in jail"). Because the circumstances in this case do not rise to the level of a violation of the right against excessive bail, Visintin has not demonstrated that this constitutional right was violated.[32]

## V. CONCLUSION

Based on the foregoing, the ICA's March 20, 2018 Judgment on Appeal is affirmed in part and vacated in part. The ICA's judgment on appeal is affirmed to the extent that it vacated the circuit court's judgment and remanded the case to the circuit court for dismissal, with or without prejudice as determined by that court, based on a finding of a HRPP Rule 48 violation. The ICA's judgment on appeal is vacated insofar as it considered Visintin's speedy trial motion and concluded that Visintin's right to speedy trial was not violated. The case is remanded to the circuit court for further proceedings. If, on remand, the circuit court decides that the Rule 48 violation warrants a dismissal without prejudice, the circuit court must then rule on Visintin's speedy trial motion, rendering findings

---

[32] It is noted that Visintin also asserted in his motion to dismiss that his right to due process was violated by the State's "unilateral" decision not to charge him when bail was initially set and then to "seek multiple arrests and successive re-postings of bail." This argument is not raised on certiorari to this court.

of facts and conclusions of law and applying the factors set forth in <u>Barker v. Wingo</u>, 407 U.S. 514 (1972), consistent with this opinion.

Tracy Murakami
for petitioner/respondent

Daniel G. Hempey
for respondent/petitioner

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

